Monique C. GOURDINE, Plaintiff,

v.

CABRINI MEDICAL CENTER, Simon Young, DPM, and Samer Bondokji, DPM, Defendants.

No. 02 Civ. 9211(VM).

United States District Court, S.D. New York.

March 9, 2004.

---

Monique C. Gourdine, Beaufort, NJ, Pro se.

Ivanyla D. Vargas, Margaret D. Kranz, New York City, for Defendants.

## DECISION AND ORDER

MARRERO, District Judge.

Pro se plaintiff Dr. Monique C. Gourdine ("Gourdine") brings this action against her former employer, Cabrini Medical Center ("Cabrini") alleging discrimination, harassment, and retaliation on the grounds of race, gender, and military status in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). The complaint further alleges breach of contract, fraud, and forgery. Also named as defendants are two of Cabrini's physicians, Drs. Simon Young ("Young") and Samer Bondokji ("Bondokji") (collectively, the "Individual Defendants," and together with Cabrini, "Defendants"). Cabrini and the Individual Defendants deny Gourdine's allegations and move this Court to dismiss her complaint on various grounds. For the reasons discussed in greater detail below, the Court grants the motion to dismiss the complaint in its entirety. Gourdine's claims are dismissed with prejudice, with the exception of her breach of contract claim, which is dismissed without prejudice.

## I. BACKGROUND [1]

The instant action arises from Gourdine's employment as a medical resident at the Cabrini Medical Center in New York. Gourdine commenced a one-year residency at Cabrini's Department of Podiatry on July 1, 1999. Gourdine's employment was governed by a written agreement executed by Gourdine, an African–American female, and Cabrini. The agreement required Cabrini to provide an educational program that meets the standards of the Accreditation Council for Graduate Medical Education (ACGME) and the Council on Podiatric Medical Education (the "CPME"). (See Def. Mem. at Ex. A, (the "Contract"), at 1.) The Contract provides that Gourdine's employment was to run from July 1, 1999 to June 30, 2000 and that "[t]here is

---

[1]. The factual summary presented herein derives primarily from the following documents: Complaint, *Gourdine v. Cabrini Medical Center*, No. 02 Civ. 9211, filed Nov. 19, 2002 (the "Complaint"); Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint, dated Sept. 15, 2003, with accompanying Exhibits ("Def.Mem."); Memorandum of Law in Support of Opposition to Motion to Dismiss, filed Nov. 19, 2003, with accompanying Exhibits ("Pl.Mem."); Reply Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint, dated Nov. 28, 2003 ("Reply"). Except where specifically referenced, no further citation to these sources will be made.

no guarantee that a House Staff Officer will be offered a position at the next level." (Contract at 2, 8.)

Gourdine commenced her employment in July 1999 pursuant to the Contract. She was one of four residents working in Cabrini's podiatric residency program at that time. One of the other residents was Bondokji, who is a white male. The other two residents included a white male and an African American male. Young was the Director of Podiatry at the time of Gourdine's employment. Gourdine claims that during her residency at Cabrini, Bondokji harassed and ridiculed her by unfairly criticizing her work in front of others. According to Gourdine, she complained to Dr. Kanuck ("Kanuck"), the Chief Resident, and to Young, but they did nothing to correct the problem. At some point, Gourdine also spoke to personnel at Cabrini's Human Resources Department, but Gourdine claims that this did nothing to change the situation. Gourdine alleges that Young himself made inappropriate comments to her and in retaliation for her complaints, that she was treated less favorably than the other residents, that she received less training, and was not given her surgical certificate. Specifically, Gourdine points to a meeting where Young allegedly alluded to Gourdine's "big mouth." Gourdine recounts another incident at a social event where Young allegedly stated that Gourdine would have been better off marrying a Jewish man rather than an African–American man.

To further establish her discrimination claim, Gourdine also asserts that she was given less desirable shifts and less training; was generally treated more harshly than the other residents; and was made to apologize to hospital personnel for matters that were not her fault. According to Gourdine, Cabrini, and in particular, Young, did not properly accommodate her commitment as a reservist with the United States Navy. Gourdine claims that she and the other African–American resident were intentionally not invited to mandatory weekly meetings so that information could be withheld from them. According to Gourdine, Cabrini failed to follow its internal procedures for dealing with claims of harassment and discrimination.

At the conclusion of the one-year residency in June of 2000, Cabrini had only one available position for a second-year podiatric resident, which was offered to Bondokji.[2] It is Gourdine's contention that Cabrini discriminated against her by not offering her a second-year position and instead, offering the only position to Bondokji, a white male. Gourdine claims that when her residency ended, she was wrongfully terminated without receiving her medical certificate, in breach of her the Contract and in retaliation for her complaining of how she was being treated at Cabrini. Gourdine asserts that she was led to believe that her one-year program was for a podiatric surgical residency, and not for a podiatric medical residency, as Cabrini asserts.

Gourdine also alleges that the signatures on a verification document that Cabrini relies upon to demonstrate that she was made aware that a second-year position was not guaranteed may have been forged (the "Verification Document").[3] She also

---

**2.** Kanuck was given a more advanced residency position for the following year because he had more experience than the other residents. Gourdine does not challenge Kanuck's promotion, conceding that he had more experience.

**3.** Gourdine submitted the document to a handwriting expert, who concluded that one signature was authentic, but found that the authorship of the other two signatures was inconclusive.

alleges a claim of "possible fraud" in connection with the alleged forgery.

In February 2001, Gourdine filed a complaint with the United States Equal Employment Opportunity Commission (EEOC), where she asserted the same claims of discrimination as in the instant action. After conducting an investigation, the EEOC notified Gourdine that it was unable to conclude that the information it obtained established any violation of Title VII. Accordingly, the EEOC ceased further investigation and issued Gourdine a "Right to Sue" letter, which is required to initiate an action in federal district court.

Defendants contest that their treatment of Gourdine was any different from how they treated the other residents, either with regard to training or in any other fashion.[4] Cabrini disputes Gourdine's claim that she received less training than her colleagues. Defendants admit that Gourdine and Bondokji had some "personality conflicts," but they contend that they attempted to address this issue in an equitable fashion. Defendants deny that Gourdine was ever treated unfairly in the process and that they discriminated against her in any way. According to Cabrini, Bondokji was the only resident selected for the second-year program because only one such position was available and it was determined that he was the best qualified to assume the position.

Defendants further argue that there was no breach of the Contract because Gourdine completed her one-year residency under its terms and thus, she was not discharged. Defendants point to the clause in the Contract that specifically states that employment beyond the first year was not guaranteed and, relying on the Verification Document, claim that Gourdine was orally informed of this provision by Young and others on more than one occasion. According to Defendants, Gourdine inquired as to the possibility of a second-year residency, but was told by Young that no decision could be made until final approval for positions was granted by the CPME. Furthermore, Cabrini explains that Gourdine did not receive her surgical certificate because she did not complete the proper training, and that even if she had, Cabrini lacks the authority to issue the certificate.

In the Complaint, Gourdine seeks unspecified damages, attorney's fees, her surgical certificate, and the salary that she would have received had she been given her certificate. Gourdine alleges violation of Title VII, 42 U.S.C. §§ 2000e *et seq.*, breach of contract, forgery, and fraud.[5]

Pending before the Court is Defendants' motion to dismiss the Complaint on the grounds that the Complaint fails to meet the pleading requirements under Federal Rule of Civil Procedure 8. Defendants also seek dismissal under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and under Rule 12(b)(6) for the failure to state a claim upon which relief can be granted. Gourdine opposes the motion.

## II. *DISCUSSION*

### A. *DEFENDANTS' MOTION UNDER RULE 8*

■ Defendants move this Court to dismiss the Complaint in its entirety on the grounds that it fails to satisfy the strictures of Rule 8 of the Federal Rules of Civil Procedure. Specifically, Defendants argue that the Complaint neither sets forth "a short and plain statement of the

---

4. Cabrini responded to the EEOC's inquiries with substantially the same contentions and explanations for Gourdine's allegations as it does in this action.

5. It appears that Gourdine also alleged an unequal pay claim in her EEOC complaint, but she has not made such an allegation in the Complaint before this Court.

claim showing that the pleader is entitled to relief" nor is "[e]ach averment ... simple, concise and direct." Fed.R.Civ.P. 8(a)(2) & (e)(1). The Court does not agree.

Although the Complaint may be cumbersome to read and somewhat voluminous, especially when all the exhibits are taken into account, the Court finds that the pleadings are sufficiently organized and understandable for counsel to sift through and distill the salient allegations and claims, as this Court has endeavored to do. Perhaps such a submission may be unacceptable from a party represented by counsel. Gourdine, however, appears pro se. Thus, the Court grants her much greater leeway in this regard. Furthermore, despite their protestations that it would be unfair to require them to answer the Complaint, Defendants have indeed filed an answer setting forth their admissions, denials, and affirmative defenses. (See Def. Mem. at Ex. F.) Thus, the Court finds that there is no basis to dismiss the Complaint on these grounds. Defendants' motion to dismiss under Rule 8 is denied.

## B. STANDARD OF REVIEW

In the alternative, Defendants move for dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). As the United States Supreme Court has explained, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (citation omitted). When, as in this case, the plaintiff is not represented by counsel, the Second Circuit has instructed courts to "construe [the complaint] broadly, and interpret [it] to raise the strongest

arguments that [it] suggest[s]." *Weixel v. Board of Educ. of N.Y.*, 287 F.3d 138, 146 (2d Cir.2002) (citations omitted); *see also Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000).

For purposes of a motion to dismiss, a court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *See Levy v. Southbrook Int'l Invs. Ltd.*, 263 F.3d 10, 14 (2d Cir.2001). In so doing, a court must not assess the strength of the plaintiff's allegations, but instead simply "assess the legal feasibility of the complaint." *Sims*, 230 F.3d at 20 (citations omitted). On the other hand, "conclusory allegations need not be credited ... when they are belied by more specific allegations of the complaint." *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir.1995). Thus, in ruling on Defendants' motion to dismiss under Rule 12(b), the Court is mindful that Gourdine appears pro se, and will grant her broad latitude in interpreting the factual allegations in the Complaint. For purposes of a motion to dismiss, "a district court must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits and documents incorporated by reference in the complaint." *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir.1999).

## C. TITLE VII CLAIM

 At the outset, the Court notes that a plaintiff who wishes to initiate a Title VII action in federal district court is required to file the action within ninety days from receipt of the EEOC's Right to Sue letter.[6] *See* 42 U.S.C. § 2000e–5(f)(1). Gourdine's Right to Sue letter is dated June 18, 2002.[7] Because the instant action

---

6. This ninety-day deadline is conspicuously noted in the Right to Sue letter.

7. In the Complaint, Gourdine admits that she actually received the Right to Sue letter on June 22, 2002. (*See* Complaint at 5.)

was commenced on November 19, 2002, it was untimely filed by approximately two months. The Court finds nothing in the record to explain the reason for this late filing. Thus, Gourdine's failure to satisfy the ninety-day requirement would be sufficient grounds to dismiss her complaint in its entirety. *See, e.g., Smith v. Henderson,* 137 F.Supp.2d 313, 317 (S.D.N.Y.2001) ("Failure to comply with the [ninety-day] time limitation[ ] warrants dismissal of the complaint.") (citation omitted). However, because the ninety-day requirement is not a jurisdictional one, but rather, a condition precedent to filing suit, it is subject to waiver. *See Johnson v. Al Tech Specialties Steel Corp.,* 731 F.2d 143, 146 (2d Cir.1984); *Smith,* 137 F.Supp.2d at 317–19. Accordingly, because Defendants failed to raise Gourdine's untimely filing as an affirmative defense in their answer, the Court will deem the defense waived. The Court proceeds to decide Gourdine's Title VII claim on the merits.

Title VII provides in relevant part that "[i]t shall be an unlawful employment practice for an employer—. . . to discharge any individual, . . . because of such individual's race, color, religion, sex, or national origin; . . ." 42 U.S.C. § 2000e–2(a)(1). In the instant case, Gourdine alleges that Cabrini and the Individual Defendants discriminated against her on the basis of her race as an African–American and on the basis of her gender and military status.

Gourdine's Title VII claim against the Individual Defendants can be dealt with summarily. Defendants seek dismissal of Gourdine's Title VII claim pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction against the Individual Defendants on the grounds that Gourdine's EEOC complaint did not name them as respondents, and thus, she failed to exhaust her administrative remedies with respect to the Individual Defendants. (*See* Def. Mem. at 5.) In the alternative, the Individual Defendants urge dismissal under Rules 12(b)(1) and 12(b)(6) on the grounds that, under the controlling law in this Circuit, there is no individual liability under Title VII. (*See id.* at 6–7.)

█ In response, Gourdine submits an excerpt of a law review article that discusses a split in the First Circuit on the question of whether individuals, such as supervisors, can be held personally liable under Title VII. Although some courts may be split on this issue, the Second Circuit has held repeatedly, and recently reaffirmed, that individuals are not personally liable under Title VII. *See Wrighten v. Glowski,* 232 F.3d 119, 120 (2d Cir.2000) (citing *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1313 (2d Cir.1995)). Accordingly, the Individual Defendants' motion to dismiss Gourdine's Title VII claim against Bondokji and Young is granted. The Court will consider Gourdine's Title VII claim only against Cabrini.

█ Because Defendants' motion seeks to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), it is not necessary for Gourdine to plead a prima facie case of unlawful discrimination under Title VII to defeat the motion. Rather, the Court will assess only the sufficiency of her allegations to determine whether "relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz,* 534 U.S. at 514, 122 S.Ct. 992 (citation omitted).

█ Applying these principles, the Court is not persuaded that the facts set forth in Gourdine's pleadings, even if accepted as true for the purposes of this motion, are sufficient to entitle her to relief under Title VII. To the extent the Title VII claim is grounded in Gourdine's alleged discharge, the Court finds that Gour-

dine has not suffered an adverse employment action—an essential element of her claim. The unambiguous terms of the Contract make it clear that Gourdine's employment was fixed at one year with no guarantee that she would be offered any further employment. (*See* Contract at 2, 8.) It is uncontested that Gourdine was employed at Cabrini as a podiatric resident for the 12–month period set forth in the Contract. Her employment thus terminated when the Contract term expired. Accordingly, the Court agrees with Defendants that Gourdine was not discharged, but rather, was employed under the limited terms of the Contract and was simply not offered a second year as a resident.

Moreover, the mere fact that Cabrini decided to offer the second-year residency to a white male and not to Gourdine, by itself, is insufficient to establish that she is entitled to relief under Title VII. Even after a careful and lenient reading of the allegations in the Complaint, the Court finds that Gourdine has failed to allege facts that, considered together, would lead to a reasonable inference that Cabrini discriminated against her on the basis of her race and/or gender in not offering her a second-year as a resident. The parties disagree over whether Cabrini's selection process was adequately structured in some respects. That dispute, however, absent clear allegations of discriminatory practices, does not form a basis to infer that discrimination played a role in Cabrini's decisions regarding residency positions.

Because, in light of the explicit provision in the Contract disclaiming any offer of employment to Gourdine after her first year of training, the facts as alleged are not sufficient to give rise to a reasonable inference that discrimination in violation of Title VII was a reason or a factor in Gourdine not being selected for a second year residency. The Court concludes that Gourdine's pleadings show no relief that could be granted "under any set of facts that could be proved consistent with the allegations." *Swierkiewicz*, 534 U.S. at 514, 122 S.Ct. 992 (citation omitted). Specifically, by reason of the Contract, Gourdine cannot establish that Cabrini was obligated to offer her a second-year residency position and that its failure to do so constituted an adverse employment action.

With regard to Gourdine's claims of harassment while she was employed at Cabrini, the Court likewise finds that Gourdine's conclusory allegations are insufficient to establish that she would be entitled to relief under Title VII.

■ Assuming the truth of the alleged criticism of Gourdine's work, her assignment to undesirable schedules, and the alleged discrepancy in her training versus the training of the other residents, the Court finds that when considered together, these allegations fail to rise to the level of creating an inference of unlawful discriminatory animus based on either gender, race, or military status. There are simply no factual pleadings in the Complaint, aside from Gourdine's conclusory assertions, that these alleged acts were motivated by unlawful discrimination.

The Court finds that the alleged inappropriate comments that Gourdine has a "big mouth" and comments regarding her choice of husband; and the other alleged incidents of perceived harassment,[8] if true, do not rise to the level of a violation under

---

**8.** Other comments and incidents Gourdine alleges include: that she was chastised for arriving a few minutes late when Bondokji and Young were not spoken to when they were late or absent; that Young stated he would not hire another military person again; that she was not allowed to train under the most experienced physician; referring to Gourdine, that Young exclaimed to a group, "What did I do to deserve her?"

Title VII. Claims of sexual harassment typically fall into one of two general categories: quid pro quo cases, where the allegations involve actual or threatened adverse employment actions arising from a refusal to succumb to a supervisor's or co-worker's sexual demands; and hostile work environment cases, where no such demands are made, but there is persistent and severe harassment based on sex. *See Burlington Indus. v. Ellerth,* 524 U.S. 742, 751–54, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *Jin v. Metropolitan Life Ins. Co.,* 310 F.3d 84, 91 (2d Cir.2002). Because Gourdine has not alleged that Defendants have made any demands upon her of a sexual nature as a condition of avoiding an adverse employment action, the Court will interpret Gourdine's harassment allegations as a hostile work environment claim.

■ The appropriate standard in this context is whether the alleged conduct is so pervasive or severe as to create a hostile work environment that alters the conditions of employment. *See Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (citing *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)); *Terry v. Ashcroft,* 336 F.3d 128, 147–48 (2d Cir.2003) (citations omitted). This determination is made with consideration of all the surrounding circumstances. *See Harris,* 510 U.S. at 23, 114 S.Ct. 367. Among the factors to be considered are the frequency of the conduct; the severity of the alleged acts; whether it was physically threatening or humiliating or just an offensive and inappropriate utterance; and whether it reasonably interferes with the performance of the plaintiff's job requirements. *See Terry,* 336 F.3d at 148 (citing *Harris,* 510 U.S. at 23, 114 S.Ct. 367).

Accepting all of Gourdine's allegations as true and viewing them in their totality in light of these factors, the Court finds that they do not establish an inference of a hostile work environment that is so pervasive and severe as to materially alter Gourdine's employment. The Court finds that the acts of harassment that Gourdine alleges are not related to race and/or gender. Although Young's alleged comment that Gourdine would be better off marrying a Jewish man rather than an African–American man does carry a racial undertone, this one comment, even when considered with the other allegations, fails to satisfy the threshold requirements to establish a claim for a hostile work environment. In this regard, the United States Supreme Court has held that occasional off-color or inappropriate remarks with racial or sexual undertones, do not alone create a hostile work environment under Title VII. *See Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 271–72, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001); *see also Howley v. Town of Stratford,* 217 F.3d 141, 153 (2d Cir.2000) (stating that remarks must be "continuous and concerted") (quoting *Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 570 (2d Cir.2000)); *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 768 (2d Cir.1998) (holding that there was no pervasive hostile work environment when a supervisor told the plaintiff that she had been voted the "sleakest ass" and touched her breasts with a piece of paper); *Perry v. Ethan Allen, Inc.,* 115 F.3d 143, 149 (2d Cir.1997) (stating that the alleged incidents must be more than "episodic") (citations omitted).[9] Thus, although a comment such as the one Gourdine alleges may be inappropriate, by itself it does not rise to the level of pervasive and severe harassment, even when considered in con-

9. Although most of these cases dealt with alleged gender-based harassment, the same standards generally apply to alleged race-based harassment. *See Richardson v. New York State Dep't of Corr. Service,* 180 F.3d 426, 436 n. 2 (2d Cir.1999) (citations omitted).

junction with Gourdine's other allegations of harassment.

■ The Court further notes that Gourdine's allegations that she was openly criticized is not actionable under Title VII because criticism of an employee's work that is not gender-or race-related does not amount to an adverse employment action giving rise to a Title VII cause of action. *See Weeks v. New York State Div. of Parole,* 273 F.3d 76, 86 (2d Cir.2001).

■ The Court is mindful that a plaintiff need not allege a minimum number of alleged incidents to establish that she is entitled to relief. *See Ferris v. Delta Air Lines, Inc.,* 277 F.3d 128, 136 (2d Cir.2001) (stating that a single egregious incident can suffice to establish a hostile work environment). However, the Court finds that the alleged incidents Gourdine relies upon to assert her claim of harassment do not establish an essential element of her Title VII claim, namely, that Gourdine was exposed to pervasive and severe harassment that rendered her employment a hostile work environment. In short, these alleged incidents, if true, are not sufficient to satisfy the Title VII standard discussed above.

■ In so holding, it is not the Court's intent to trivialize the subjective effect that these alleged comments may have had on Gourdine, nor does the Court sanction such alleged conduct. The determination as to whether a hostile work environment exists, however, has both a subjective and objective component. *See Alfano v. Costello,* 294 F.3d 365, 374 (2d Cir.2002) (citing *Harris,* 510 U.S. at 21, 114 S.Ct. 367). The Court finds that when considered objectively, the alleged incidents collectively do not create an inference of pervasive and severe harassment that amounts to a hostile work environment.

Furthermore, Gourdine is correct that these incidents, if true, may violate Cabrini's internal policies governing the con-

duct of its employees. The role of the Court, however, is not to determine whether Cabrini's policies have been breached. Rather, the Court is to assess only the sufficiency of Gourdine's allegations to determine whether they can state a claim of discrimination under Title VII under any set of facts upon which relief can be granted. For the reasons stated above, the Court finds that they do not.

■ For similar reasons, the Court is not persuaded that Gourdine's pleadings as now formulated are sufficient to entitle her to relief on a claim of retaliation under Title VII. Such a claim requires a showing that: (1) the plaintiff was engaged in an activity protected by Title VII; (2) the employer was aware of the plaintiff's participation in the protected activity; (3) the employer took an adverse action against the plaintiff; and (4) there is a causal connection between the protected activity and the adverse action. *See Mack v. Otis Elevator Co.,* 326 F.3d 116, 129 (2d Cir. 2003) (citation omitted).

■ Gourdine alleges that Defendants retaliated against her for lodging internal complaints regarding her treatment and training; and the alleged harassment by Bondokji and Young. Specifically, Gourdine alleges that she suffered retaliation because she complained to Kanuck that she was not receiving the proper training. She also complained that Bondokji had openly criticized her and that Young stated that she had a big mouth, among other incidents, as discussed above. According to Gourdine, the acts of retaliation included receiving less training than her colleagues, being made to work less desirable shifts, and the denial of her surgical certificate.

The Court finds that the nature of Gourdine's internal complaints, as alleged, would not be a "protected activity" within the ambit of Title VII. Under the relevant

provision, an employer may not retaliate against an employee because that employee has "opposed any practice made an unlawful employment practice by [Title VII]. . . ." 42 U.S.C. § 2000e–3(a). Thus, in order for an employee's complaints to be a "protected activity," they must relate to alleged violation of Title VII, i.e., the complaints must relate to race or gender. Otherwise, any employee who is disgruntled or dissatisfied with any aspect of his or her employment would ultimately find relief in Title VII even when race or gender was not at issue.

The Court concludes that Gourdine's internal complaints that Bondokji was harassing her by criticizing her, that Cabrini had not permitted her to train under the most experienced physician, and Young's occasional offensive remarks, only one of which contained a racial undertone, are not sufficiently related to a violation of Title VII to be deemed a "protected activity" for which Gourdine could have been subjected to unlawful retaliation.

 The Court likewise finds conclusory Gourdine's allegations that Defendants' alleged acts, to the extent that these acts even constitute adverse employment actions, were motivated by Defendants' desire to retaliate against her. *See, e.g., Weeks,* 273 F.3d at 86 (stating that criticism of an employee is not an adverse employment action). Furthermore, with the exception of the alleged denial of Gourdine's surgical certificate, the Court concludes that the alleged retaliatory acts Gourdine complains of do not amount to an

adverse employment action to establish her claim.[10] In sum, other than Gourdine's conclusory statements, these alleged acts, even if true, do not raise a reasonable inference that Cabrini was motivated by discriminatory retaliation for Gourdine's internal complaints regarding the alleged harassment.

In dismissing Gourdine's Title VII claim against Cabrini, the Court also considers the fact that the EEOC investigated substantially the same allegation asserted in this action and determined that it was unlikely that it would find a violation of the laws it enforces, which includes Title VII. The Court recognizes that the EEOC's findings are not entitled to any deference, and thus, the Court reviews the case *de novo.* However, the Court may give the EEOC's findings some consideration in arriving at its own determinations. *See Christian v. Henderson,* No. 98 Civ. 3467, 2000 WL 534518, at *7 (S.D.N.Y. May 3, 2000) (granting the EEOC's opinion some weight).[11]

 Finally, the Court finds no merit to Gourdine's claim that she was discriminated on the basis of her military status. Title VII does not include military status as a basis for unlawful discrimination. *See* 42 U.S.C. § 2000e–2(a)(1) (stating that employers may not discriminate on the basis of race, color, religion, sex, or national origin). In any event, because Gourdine's claims of discrimination on the basis of her military status are grounded in the same allegations as her claims of discrimination

---

**10.** Although the denial of Gourdine's surgical certificate may be deemed an adverse employment action, the Court dismisses her retaliation claim on the basis that her internal complaints, as alleged, are not a "protected activity" that merit protection under Title VII.

**11.** Although this case involved a motion for summary judgment, the Court finds that the

EEOC's conclusions are properly considered in this case because Gourdine included the EEOC's letter detailing its conclusions as an exhibit to the Complaint. *See Chambers v. Time Warner, Inc.* 282 F.3d 147, 152–53 (2d Cir.2002) (stating that when deciding a motion to dismiss, a court may consider documents included in the complaint and relied upon by the plaintiff) (citations omitted).

on the basis of race and/or gender, the Court finds no merit to such a claim for the same reasons discussed above.

Although Gourdine's burden at this stage is merely to allege sufficient facts to demonstrate that she would be entitled to relief under Title VII, the Court finds that she has failed to meet even this minimal pleading requirement.

Accordingly, Gourdine's Title VII claim against the Individual Defendants is dismissed with prejudice on the grounds that individuals may not be held liable under Title VII. Gourdine's Title VII claim against Cabrini is also dismissed because Gourdine fails to assert sufficient facts that could be proved consistent with her allegations to make out a claim of unlawful discrimination, racial or sexual harassment, or retaliation, even after viewing the Complaint in a light most favorable to Gourdine and granting her the benefit of all reasonable inferences.

### D. STATE LAW CLAIMS

■ With the dismissal of Gourdine's federal Title VII claim, her remaining claims arise only under state law. Defendants urge the Court to decline to exercise its supplemental jurisdiction over Gourdine's related state claims. (*See* Def. Mem. at 8–9.) In these instances, the Court has discretion to dismiss Gourdine's related state law causes of action. *See* 28 U.S.C. § 1367(c).[12] Indeed, absent unique circumstances, a federal court should decline to exercise supplement jurisdiction over state law claims when no federal claim survives. As the Second Circuit has explained, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction

doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir.2003) (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)); *see also Baylis v. Marriott Corp.*, 843 F.2d 658, 664 (2d Cir.1988) ("The basis for retaining jurisdiction is weak, when as is the case here, the federal claims are dismissed before trial."). For the reasons discussed below, the Court will exercise supplemental jurisdiction over Gourdine's forgery and fraud claims and consider these claims on the merits, but will exercise its discretion under § 1367(c) and dismiss her breach of contract claim without prejudice.

#### 1. *Forgery*

■ Gourdine alleges that the signatures on the Verification Document may not be authentic. The Court finds it unnecessary to delve into the merits of this claim. Although the authenticity of the signatures on this document would be relevant to its admissibility in the event this issue were ever tried, an act of forgery is a crime and does not give rise to a recognized civil cause of action. *See Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir.2002) (affirming the district court's dismissal of the plaintiff's civil forgery claim because there is no cognizable civil cause of action for forgery). Accordingly, Gourdine's forgery claim is dismissed with prejudice.

#### 2. *Fraud*

■ Gourdine also alleges "possible fraud" in connection with the alleged for-

---

**12.** The statute states in pertinent part:
 The district courts may decline to exercise supplemental jurisdiction over a claim ... if—... (3) the district court has dismissed all claims over which it has original jurisdiction, ..."
 28 U.S.C. § 1367(c).

gery. (Pl. Mem. at 21.) Under New York law, the elements of a fraud claim are that: (1) the defendant made a false representation of material fact; (2) the plaintiff justifiably relied on the misrepresentation; and (3) the plaintiff was damaged from such reliance. *See Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 784 (2d Cir. 2003).

■■■ The Court finds that Gourdine's fraud claim fails because her allegation that the signatures on the Verification Document are forged cannot establish the essential elements of the claim. There is no suggestion from Gourdine's allegations that she justifiably relied on the authenticity of the signatures on the Verification Document in any way, nor that she was damaged as a result thereof. Gourdine challenges the signatures only to rebut Defendants' claim that she was made aware that a second-year residency position was not guaranteed. As such, the allegations are insufficient as a matter of law to establish a claim for fraud. The Court supposes, based on Gourdine's pro se appearance in this action, that she incorrectly understands "fraud" and "forgery" to be synonymous, as evidenced by her asserting the claims together as "possible fraud and forgery" in connection with her allegation that the signatures on the Verification Document are not authentic.

■■■ The Court further finds that Gourdine's fraud claim is deficient under the applicable federal rule. Under Federal Rule of Civil Procedure 9(b), a plaintiff stating a claim of fraud or mistake must allege "the circumstances constituting [the] fraud or mistake ... with particularity." Fed.R.Civ.P. 9(b). To satisfy the particularity requirement,

a plaintiff should specify the time, place, speaker, and content of the alleged misrepresentations.... In addition, the complaint should explain how the misrepresentations were fraudulent and plead those events which give rise to a strong inference that the defendant[ ] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth.

*Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir.2001) (internal quotations and citations omitted). The Court finds that Gourdine has failed to meet this standard even under a liberal reading of the allegations in the Complaint. The Complaint is devoid of any facts from which it can be reasonably inferred that Defendants intended to defraud Gourdine, knew that a false representation had been made to Gourdine, or had a reckless disregard for the truth. The Court is persuaded that the fraud claim in the Complaint is conclusory and thus, fails to meet even the minimal pleading requirements.

The Court is mindful that plaintiffs, particularly those appearing pro se, generally should be permitted to replead a fraud claim when dismissal is based on the failure to meet the particularity requirement of Rule 9(b). *See Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir.1986). However, for the reasons discussed above, the Court finds that permitting Gourdine to replead a fraud claim based on her allegations of forgery would be futile, as this claim suffers from substantive and not mere technical deficiencies.[13] *See Caputo*, 267 F.3d at 191 (stating that a court need not grant leave to replead a dismissal under Rule 9(b) when repleading would be futile) (citing *Luce*, 802 F.2d at 56–57). Accordingly, the Court grants Defendants' motion to

---

**13.** For the same reason, the Court dismisses Gourdine's forgery claim without leave to re-

plead.

dismiss the fraud claim with prejudice for failure to state a cause of action upon which relief can be granted.

### 3. *Breach of Contract*

 Gourdine alleges that Cabrini breached the Contract by failing to grant her a surgical certificate in accordance with its terms. Gourdine further alleges that the type of residency program that was agreed to under the terms of the Contract is not the same program that Cabrini now asserts she was offered. Upon a careful review of the Complaint and the supporting exhibits,[14] the Court finds that Gourdine has made, at the very least, a colorable claim for breach of contract. The Court, however, agrees with Defendants that Gourdine has failed to delineate the elements of a breach of contract claim because it is not clear that she satisfied the requisite training requirements that potentially would trigger a contractual obligation by Cabrini to issue a surgical certificate. It is also not clear from Gourdine's pleadings to what extent, if any, she is relying on the Contract to allege that Cabrini did not offer her the appropriate residency program.

Because the Court finds that by repleading this claim, Gourdine may be able to assert facts sufficient to state the elements of a breach of contract claim sufficient to defeat a motion to dismiss, it will exercise its discretion under § 1367(c) and dismiss this claim without prejudice. Gourdine is not precluded from repleading her breach of contract claim in state court, or in this Court if she can properly invoke diversity jurisdiction under 28 U.S.C. § 1332. Accordingly, Gourdine's breach of contract claim is dismissed without prejudice.

### III. *ORDER*

For the reasons set forth above, it is hereby

ORDERED that the motion of defendants Cabrini Medical Center, Simon Young, and Samer Bondokji's ("Defendants") to dismiss the complaint of plaintiff Monique C. Gourdine ("Gourdine") on the grounds that it fails to satisfy Rule 8 of the Federal Rules of Civil Procedure is DENIED; and it is further

ORDERED that the motion of Defendants' to dismiss Gourdine's complaint under Rule 12(b) of the Federal Rules of Civil Procedure is GRANTED. Gourdine's Title VII, fraud, and forgery claims against Defendants are dismissed with prejudice. Gourdine's breach of contract claim against Cabrini Medical Center is dismissed without prejudice.

**SO ORDERED.**

14. Gourdine included a copy of the Contract as an exhibit to the Complaint.