Jackeline **HERNÁNDEZ–MEJÍAS**, Plaintiff,

v.

**GENERAL ELECTRIC, et al.**, Defendants.

No. CIV. 03–1289(JAF).

United States District Court, D. Puerto Rico.

Oct. 7, 2005.

Maria S. Kortright–Soler, M. S. Kortright Soler Law Office, San Juan, PR, Pedro R. Vazquez, III, Pedro R. Vazquez Law Office, Guaynabo, PR, for Plaintiff.

Carl E. Schuster, Mariela Rexach–Rexach, Schuster Usera & Aguilo LLP, San Juan, PR, for Defendants.

## *OPINION AND ORDER*

FUSTE, Chief Judge.

Plaintiff, Jackeline Hernández–Mejías, filed the present complaint against Defendants, General Electric Products ("GE") and Caribe GE Distribution Components ("Caribe GE"), alleging discrimination and unlawful termination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 20003–17 (1994 & Supp.2005), as augmented by the Pregnancy Discrimination Act of 1978 ("PDA"), 42 U.S.C. § 2000e(k). *Docket Document Nos. 1, 13.*

## I.

### *Factual and Procedural Synopsis*

Our determination based upon the Magistrate Judge's disposition is *de novo.* FED. R. CIV. P. 72(b). As required, we

will review and weigh the evidence presented to the magistrate judge, *Docket Document No. 78, 89*, rather than merely relying on the magistrate judge's Report and Recommendation. *LaCedra v. Donald W. Wyatt Det. Facility*, 334 F.Supp.2d 114, 125 (D.R.I.2004).

However, we exercise our discretion in accepting those parts of the Report and Recommendation to which Defendant does not object. *Id.*

Plaintiff worked as a temporary contract employee for Defendant Caribe. Her first employment contract was for December 21, 1998 to January 30, 1999. She signed another employment contract on January 29, 1999 for a period ending on July 30, 1999, and continued to sign either one-, four- or six-month contracts, consecutively, through November 30, 2000. Plaintiff became pregnant in August 2000 and informed Defendant of her condition. On September 21, 2000, Plaintiff took medical leave from work due to a pregnancy-related health complication. Plaintiff received statutory disability payments during her leave. Plaintiff's employment contract had expired during her medical absence, on November 30, 2000, and when she returned to work on December 11, 2000, she signed a new, one-month contract. Plaintiff again left work due to a pregnancy-related complication on March 10, 2001. She gave birth on April 12, 2001, and received disability benefits through June 14, 2001.

Two days prior to the expiration of her disability benefits' term, Plaintiff spoke with human resources Manager Awilda Ríos regarding her return to work. According to Plaintiff, Plaintiff called Ríos, who informed Plaintiff that due to a lack of work, Defendant would be unable to renew Plaintiff's work contract.

Ríos insists that she had tried to contact Plaintiff regarding a position in Defendant Caribe's Molding Department that was available to her, but that Plaintiff did not accept the position. Ríos sent a letter to Plaintiff memorializing a June 27, 2001 conversation in which Plaintiff refused an offer for a Molding Department position, but that the letter was returned to Ríos as "unclaimed/refused" on July 26, 2001. *Docket Document No. 109.*

Plaintiff filed the present complaint on March 17, 2003, alleging that she was discharged because of her pregnancy in violation of Title VII and the PDA. *Docket Document No. 1.* On November 29, 2004, Defendants moved for summary judgment, claiming that: (1) Plaintiff's discrimination claims are not sustainable under the burden-shifting framework applicable in Title VII cases; and (2) Plaintiff did not exhaust her administrative remedies against Defendant GE. *Docket Document Nos. 78, 97.* On December 29, 2004 Plaintiff opposed the motion. *Docket Document No. 89.*

On April 6, 2005, this court referred Defendants' summary judgment motion to Magistrate Judge Aida M. Delgado–Colón for a Report and Recommendation. *Docket Document No. 107.* On August 18, 2005, the Magistrate Judge issued a Report and Recommendation, granting Defendants' motion with regards to the exhaustion of administrative remedies against Defendant GE and denying Defendants' motion with regards to the underlying discrimination claims. *Docket Document No. 111.*

On September 16, 2005, Defendant Caribe filed an objection to the Report and Recommendation, requesting that we decline to adopt the Magistrate Judge's disposition with regards to the discrimination claims. *Docket Document No. 115.*

## II.

### *Analysis*

As a preliminary matter, we ADOPT the Magistrate Judge's factual synopsis and

also her recommendation regarding exhaustion of administrative remedies against Defendant GE. *Docket Document No. 111.* All claims against Defendant GE are **DISMISSED**. Judgment shall be entered accordingly.[1]

We will first consider the two arguments raised in Defendant's objection regarding Plaintiff's discrimination allegations: (1) Plaintiff failed to establish a prima facie case of discrimination; and (2) Plaintiff failed to reveal Defendant's proffered non-discriminatory reasons for termination as pretextual. *Docket Document No. 115.* Additionally, we will consider whether the present case may survive summary judgment as a disparate impact claim, an issue only indirectly addressed in the pleadings and Magistrate Judge's Report and Recommendation. *Docket Document Nos. 1, 78, 89, 111.*

We proceed according to the analytical roadmap articulated in the Magistrate Judge's opinion, *Docket Document No. 111,* which relies on *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the case that established the burden-shifting framework commonly used for analyzing Title VII discrimination cases. *Smith v. F.W. Morse & Co.,* 76 F.3d 413, 420 (1st Cir. 1996).

## A.  *Prima Facie Claim*

The *McDonnell Douglas* framework first requires that a plaintiff establish a prima-facie case by demonstrating that: (1) she was pregnant or had indicated an intention to become pregnant; (2) she met the employer's legitimate performance expectations; (3) she experienced an adverse employment decision by her employer; and (4) the employer had a continuing need for the services that plaintiff had been rendering. *Smith,* 76 F.3d at 421.

Defendant contends that contrary to the Magistrate Judge's recommendation, Plaintiff has established neither that she experienced an adverse employment action nor that Defendant had a continuing need for her services, and so fails to put forward a prima facie discrimination claim. *Docket Document No. 115.*

### 1.  *Adverse Employment Action*

■   Plaintiff's final employment contract with Defendant expired on April 20, 2001. *Docket Document No. 89, Exh. 11.* Plaintiff left work on disability leave prior to the expiration date, on March 10, 2001, due to pregnancy-related complications. *Docket Document No. 89.* Plaintiff alleges that when she returned to work on June 12, 2001, she was not offered a position. Indisputably, her employment contract was not renewed. *Docket Document No. 78.* Defendant claims the failure to renew Plaintiff's contract was not an adverse employment action. *Id.*

For support, Defendant relies upon *Gourdine v. Cabrini Medical Center,* 307 F.Supp.2d 587, 595 (S.D.N.Y.2004), in which the court found that an employer-defendant's failure to renew an employee-plaintiff contract does not constitute an adverse employment action if the contract makes no guarantee of further employment. As Defendant notes, the Second Circuit affirmed this finding, while vacating other portions of the district court's decision. 128 Fed.Appx. 780, 782 (2d Cir. 2005). However, the appellate decision is not to be cited as precedential authority, *id.,* and, therefore, we place no weight on its holding.

Other courts, meanwhile, have treated and sometimes explicitly found the failure to renew an employment contract as an adverse employment action cognizable un-

---

1.  Henceforth, "Defendant" will refer to the    single remaining Defendant, Caribe GE.

**8**

der Title VII. *See, e.g., Kassaye v. Bryant College,* 999 F.2d 603, 607 (1st Cir.1993) (noting that refusal to renew employment contract may provide grounds for Title VII complaint); *Mateu–Anderegg v. Sch. Dist. Of Whitefish Bay,* 304 F.3d 618, 625 (7th Cir.2002) (finding, in contract-renewal Title VII case, "it is undisputed that [plaintiff] ... suffered an adverse employment action"); *Walker v. Bd. of Regents of Univ. of Wis. Sys.,* 300 F.Supp.2d 836, 851–52 (W.D.Wis.2004) (Title VII applies "equally to both termination decisions and the refusal to re-hire."); *Flores–Suarez v. Turabo Med. Ctr. P'ship,* 165 F.Supp.2d 79, 91 (D.P.R.2001); *Meadows v. State Univ. of N.Y. at Oswego,* 160 F.R.D. 8, 12 (N.D.N.Y.1995) (considering decision not to renew contract as adverse employment action); *Castro v. United States,* 584 F.Supp. 252, 258 (D.P.R.1984) (dismissing failure-to-renew-contract claim on other grounds).

As even at-will employees and job applicants are entitled to Title VII protection, *see Williams v. Raytheon Co.,* 220 F.3d 16, 19 (1st Cir.2000); *Costa v. Markey,* 706 F.2d 1, 2 (1st Cir.1982), we agree with the overwhelming majority of courts that non-renewal of an employment contract constitutes an adverse employment action.

### 2. *Continuing Need for Services*

■ Establishing a prima facie case under Title VII and the PDA requires Plaintiff to show that Defendant continued to have Plaintiff's duties performed by a comparably-qualified person after Plaintiff's discharge. *Smith,* 76 F.3d at 421.

The present case does not fit neatly into this element of the burden-shifting framework because Plaintiff's discharge was caused by her contract's termination and the subsequent lapse in time before she requested a renewal. *Docket Document No. 111.* Nevertheless, entirely relevant to this inquiry is whether Defendant need-ed Plaintiff's services at the time that it allegedly declined to extend her a position in June 2001. *See Weston–Smith v. Cooley Dickinson Hosp., Inc.,* 282 F.3d 60, 64 (1st Cir.2002) (noting that "the *McDonnell Douglas* framework is a flexible evidentiary standard whose requirements vary depending on the context").

Plaintiff claims that Defendant did have a continuing need for her services, but that she was not re-hired because of pregnancy-based discrimination. *Docket Document No. 89.* Defendant avers that Plaintiff has failed to present any supportable claim that there was a continuing need for her services in the Assembly Department at the time that she requested to be re-hired on June 12, 2001. *Docket Document No. 115.* While paying lip service to the prima facie standard which sets forth Plaintiff's burden to establish a continuing need for services, the Magistrate Judge failed to address this issue in her analysis. *Docket Document No. 111, p. 21.*

Reviewing the record, we find nothing that could be construed as supporting Plaintiff's prima facie burden to establish a continuing need for her services. Plaintiff presents no allegations or evidence to guide us. In deposition, Ríos maintained that depending on product demand cycles, the personnel demand in various plant departments (i.e., Molding versus Assembly) would vary drastically, and employees would be laid off or hired accordingly. *Docket Document No. 89, Exh. 3.* Ríos also stated that it was common for fewer employees to be needed in the Assembly Department during slower cycles. *Id.*

Nothing in Ríos' statement could be construed as suggesting that Plaintiff was discharged despite a continuing personnel need in the Assembly Department. To the contrary, the record suggests that a position was offered to Plaintiff in the Molding Department, but that Plaintiff refused the

offer. *Docket Document No. 109*. There is no evidence in the record to suggest a demand for personnel in the Assembly Department. Because Plaintiff has not shown that Defendant had a continued need for her services after her termination, she has failed to establish a prima facie case for discrimination under Title VII and the PDA.

## B. *Defendant's Rebuttal*

█ Had Plaintiff successfully presented a prima facie discrimination claim, the burden of production would shift back to the employer-defendant who must rebut the inference of discrimination by articulating some legitimate, non-discriminatory reason for the adverse employment action. *Domínguez–Cruz v. Suttle Caribe, Inc.*, 202 F.3d 424, 430 (1st Cir.2000).

Assuming, arguendo, that Plaintiff fulfilled her prima facie burden, we find that Defendant successfully rebuts any presumption that it unlawfully discriminated against her. *Fennell v. First Step Designs, Ltd.*, 83 F.3d 526, 535 (1st Cir.1996).

First, Defendant renewed Plaintiff's contract after she had announced her pregnancy, in January 2001. *Docket Document No. 89, Exh. 11*. In contrast, the decision not to renew Plaintiff's contract in June 2001 was made after Plaintiff's pregnancy term was over and she was ready to return to work in a full-time capacity. *Docket Document No. 115*. The timing of these personnel decisions strongly suggests that they were tied to "legitimate reasons unrelated to her pregnancy." *Smith*, 76 F.3d at 424.

Defendant's reason for the discharge is altogether convincing. In accordance with Defendant's policy for all employees on leave of absence, once Plaintiff's employment contract had expired, her position was filled by another employee and she was taken off the records. Because Defendant claims that it could not "renew a contract with a person that is not there," when Plaintiff's contract lapsed, she lost her Assembly Department position. *Docket Document No. 89, Exh. 3*. Defendant submits evidence supporting its contention that Plaintiff was offered a position in the Molding Department, but that Plaintiff would not accept the position, presumably because she only wanted a position in the Assembly Department. *Docket Document No. 109*.

Plaintiff avers that her discharge is linked to the issue of her seniority status, because more senior employees are given priority during hiring and firing decisions. *Docket Document No. 89*. Plaintiff ascribes the decision not to renew her contract on June 12, 2001 to an alteration of her seniority status that had occurred six months earlier. *Id.; Docket Document No. 115*.[2] Plaintiff claims that her lack of seniority, itself a product of discriminatory treatment, contributed to the June 12, 2001 decision not to rehire her, as there was a continuing need for her services but she was not given preference because of her low seniority. *Docket Document No. 89*. Although Plaintiff concedes that her final employment contract had already lapsed on April 20, 2001, she maintains that she complied with all criteria in order

---

**2.** Defendant's seniority system is based upon an employee's start date, and the start date is reset when an employee allows a contract to lapse and then initiates a new contract at a later date. *Docket Document No. 89, Exh. 2, ¶¶ 30–33*. Plaintiff's seniority was altered because her work contract had lapsed, without renewal, for ten days between November 30 and December 11, 2000. In accordance with the company's seniority policy, Plaintiff's start date was designated as December 11, 2000, the day that she initiated a new contract after her prior contract had lapsed.

to keep her employment active beyond the April 20 expiration. *Id.*

Defendant argues that Plaintiff's seniority status had no impact upon Plaintiff's employment rights at the time that her contract expired in April 2001 or when she sought reinstatement in June 2001. Instead, Defendant avers that Plaintiff's contract expired in accordance with temporary contract employee policy, a position in the Assembly Department could not be offered, and Plaintiff refused an offer for a position in the Molding Department. *Docket Document Nos. 78, Exh. 17; 97, 115.*

As Defendant has articulated a legitimate reason for Plaintiff's discharge of her contract expired so she lost her Assembly Department position, and she refused an offer to work in the Molding Department-we are satisfied that Defendant has proffered a compelling rebuttal to any inference that Plaintiff suffered an adverse employment action because of her pregnancy.

## C. *Defendant's Rebuttal as Pretext*

As Defendant has satisfied its burden of production by "articulating not necessarily proving some legitimate, nondiscriminatory reason" for Plaintiff's discharge, Plaintiff now must "carry her burden of proof by demonstrating that 'the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Cumpiano v. Banco Santander P.R.*, 902 F.2d 148, 153 (1st Cir.1990)(citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). Throughout the entire analysis, the plaintiff must prove that she would not have suffered the adverse employment action but for her membership in a protected class. *See Freeman v. Package Mach.*, 865 F.2d 1331, 1335 (1st Cir.1988).

Plaintiff attempts to satisfy her burden by asserting that Defendant "experienced busy work periods with high volume in sales during the middle of ... 2001[and] was in need of such employees and they had evidence of such need." *Docket Document No. 89.* In support, Plaintiff cites to Ríos' deposition, in which Ríos stated that she had voiced objections in the past to Defendant's policy regarding temporary employees. *Id., Exh. 3.* Nothing in Ríos' deposition suggests a need for Assembly Department employees in June 2001. In response to a question regarding the need for temporary employees in 2001, Ríos stated, "I don't remember .... [I]t would come up like at the middle of the year or so on that we would need temps employees, that would be regarding our sales. If our sales would go up, we needed temps ...." *Id., p. 93.* In response to a question about whether the cycles were higher mid-year, Ríos said, "it all depends ... We had ... three different processes. So we could have one of the areas having a high need for employees, and then one of the areas not having that high need." *Id.* Ríos' answer does not support Plaintiff's contention that an Assembly Department position was not extended to her despite its availability. To the contrary, Ríos stated that Defendant implemented lay-offs in June or July 2001. *Id., p. 102.*

Plaintiff offers no evidence or argument suggesting that Defendant's stated reason for discharge is merely pretextual. Taking some distance from the *McDonnell Douglas* burden-shifting framework, we note that "the critical determination in any Title VII suit is whether the complainant has proven by a fair preponderance of the evidence that an impermissible consideration ... was a substantial motivating factor in the adverse employment decision." *Cumpiano*, 902 F.2d at 155. Plaintiff has failed in this endeavor.

## D. *Disparate Impact*

██ Under Title VII, employment discrimination claims can arise in two differ-

ent ways. *Id.* Above, we have assessed Plaintiff's claim as it was articulated in the complaint, as a "disparate treatment" claim that is, one that "arises when an employer treats an employee less favorably than others because of her" protected status. *Id.* (citing *Int'l Bhd. Of Teamsters v. United States,* 431 U.S. 324, 335–36 n. 15, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)). However, elements of Plaintiff's complaint and responsive pleadings suggest that Plaintiff also relies on disparate impact. Disparate impact stems from employment practices, "often facially neutral, which (1) cannot be justified by business necessity and (2) in fact impose harsher burdens on employees who share a protected characteristic." *Cumpiano,* 902 F.2d at 156.

■ Plaintiff cites to four other instances in which temporary employees had taken leave for pregnancy and were subsequently unable to renew their expired employment contracts. *Docket Document No. 89.* Interpreted favorably, Plaintiff could be construed as arguing that Defendant's temporary employment renewal policy unfairly and disparately impacts pregnant employees. However, nowhere in the complaint or in response to Defendant's motion for summary judgment does Plaintiff argue for the necessary elements of a disparate impact claim. *Docket Document No. 1, 89.* Specifically absent is an argument for why Defendant's contract renewal policy is unjustifiable by business necessity, a necessary element of a disparate impact claim. *Cumpiano,* 902 F.2d at 156. As Plaintiff has failed to "set forth specific facts showing that there is a genuine issue for trial," FED. R. CIV. P. 56(e), we find that the disparate impact claim must fail.

**E.** *Supplemental Jurisdiction*

Because all of Plaintiff's federal claims have been dismissed, we decline to exercise supplemental jurisdiction over Plain-tiff's associated state-law claims. *Rivera v. Murphy,* 979 F.2d 259, 264 (1st Cir. 1992) (quoting *Cullen v. Mattaliano,* 690 F.Supp. 93 (D.Mass.1988) ("[I]t is the settled rule in this Circuit that in a non-diversity case, where pendent state claims are joined with a federal cause of action and that the federal cause of action is [dismissed] ... the pendent state claims should be dismissed.")).

## III.

### *Conclusion*

In accordance with the foregoing, we decline to adopt the Magistrate Judge's report and recommendation, and **GRANT** Defendant's motion for summary judgment. *Docket Document No. 78.* Plaintiff's PDA and Title VII claims are **DISMISSED WITH PREJUDICE.** Plaintiff's state law causes of action are **DISMISSED WITHOUT PREJUDICE.** Judgment shall be entered accordingly.

**IT IS SO ORDERED.**