Frank **GENER–VILLAR** d/b/a/ Gener Advertising, Plaintiff

v.

**ADCOM GROUP, INC.,**
et al., Defendants.

Civil No. 03–1306 (FAB).

United States District Court,
D. Puerto Rico.

Aug. 24, 2007.

Jose L. Ramirez–De–Leon, Ramirez Law Office, Edelmiro Antonio Salas–Gonzalez San Juan, PR, for Plaintiff.

Ramon L. Walker–Merino, Walker Merino Law Office, San Juan, PR, Luis R. Santos, Santos & Nieves Blas, Mayaguez, PR, for Defendants.

## MEMORANDUM AND ORDER

FRANCISCO A. BESOSA, District Judge.

 A District Court may refer pending dispositive motions to a Magistrate Judge for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B); Fed.R.Civ.P. 72(b); Loc. Rule 72(a). Any party adversely affected by the report and recommendation may file written objections within ten days of being served with the Magistrate Judge's report. *See* 28 U.S.C. § 636(b)(1). A party that files a timely objection is entitled to a *de novo* determination of "those portions of the report or specified proposed findings or recommendations to which specific objection is made." *Sylva v. Culebra Dive Shop*, 389 F.Supp.2d 189, 191–92 (D.P.R.2005) (*citing United States v. Raddatz*, 447 U.S. 667, 673, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980)). Failure to comply with this rule precludes further review. *See Davet v. Maccarone*, 973 F.2d 22, 30–31 (1st Cir.1992). In conducting its review, the Court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge." 28 U.S.C. § 636(a)(b)(1). *Templeman v. Chris Craft Corp.*, 770 F.2d 245, 247 (1st Cir.1985); *Alamo Rodriguez v. Pfizer Pharmaceuticals, Inc.*, 286 F.Supp.2d 144, 146 (D.P.R.2003). Furthermore, the Court may accept those parts of the report and recommendation to which the parties do not object. *See Hernandez–Mejias v. General Elec.*, 428 F.Supp.2d 4, 6 (D.P.R. 2005) (*citing LaCedra v. Donald W. Wyatt Detention Facility*, 334 F.Supp.2d 114, 125–126 (D.R.I.2004)).

On August 9, 2007, the United States Magistrate Judge issued a Report and Recommendation, recommending that the Defendant **Supermercado Mr. Special's** Motion for Partial Summary Judgment (Docket No. 87) be denied. (*See* Docket No. 99)

On August 13, 2007, defendant **Adcom Group, Inc.** ("ADCOM") filed an "Objection to Magistrate's Report and Recommendation". (Docket No. 100).[1] The only

1. On August 15, 2007, Supermercados Mr. Special filed a "Motion adopting Adcom

"objection" raised by ADCOM, pertaining to Mr. Special's Motion for Partial Summary Judgment[2], is a statement included by the Magistrate Judge on page 2 of the Report and Recommendation, regarding the copyright holder of the works here at issue.[3] It is ADCOM's contention that "the statement gives the impression that the Court of Appeals made such a finding or reached such a legal conclusion." (Docket No. 100, p. 1) No further objections were made.

Having considered ADCOM's objections, and after an independent examination of the record in this case, the Court **ADOPTS** the magistrate judge's findings and recommendations except that the Court **DOES NOT ADOPT** the statement on page 2 of the R & R to which ADCOM objected.

Accordingly, defendant Mr. Special's Motion for Partial Summary Judgment (Docket No. 87) is hereby **DENIED.**

The case is once again referred to Magistrate Judge Velez–Rive for all remaining pretrial matters. The parties should seriously consider consenting to have Magistrate Judge Velez conduct any and all remaining proceedings in this case, including the trial, order the entry of a final judgment and conduct all post-judgment proceedings.

**IT IS SO ORDERED.**

Group Inc. objection to the Magistrates [sic] Report and Recommendation" (Docket No. 102). Its Motion is hereby **NOTED and GRANTED.**

2. As part of its "Objection to Magistrate's Report and Recommendation", ADCOM also reminded the Court of the reasons why **its** Motion for Summary Judgment (Docket No. 57) should be granted. ADCOM's position

# REPORT AND RECOMMENDATION

CAMILLE L. VELEZ RIVE, United States Magistrate Judge.

## INTRODUCTION

Co-defendant Supermercado Mr. Special (hereinafter "Mr. Special") has filed a motion for partial summary judgment which was duly opposed by plaintiff Frank Gener–Villar (hereinafter "Gener"). (**Docket Nos. 87, 89**). These motions were referred to this Magistrate Judge for report and recommendation (**Docket No. 97**).

## GENERAL BACKGROUND

Plaintiff Gener is a graphic artist who contracted with co-defendant Adcom Group, Inc. ("Adcom"), an advertising agency, to prepare images and advertising and promotional materials to use in Adcom's advertisements for its clients, including herein co-defendant Mr. Special. The photographs and digital images were stored on computers owned by Gener but located at Adcom's facilities. The contract did not specify who retained the copyright to the images.

On February 22, 2000, Adcom terminated the contract with Gener and demanded that Gener turn over the images, which he refused. Adcom seized Gener's computers and Gener then filed a "grievance" before a magistrate in the Investigations section of the San Juan Judiciary Center, seeking a provisional adjudication of the dispute under 32 P.R. Laws Ann. §§ 2871–2877 (authorizing magistrates to provisionally

was fully briefed and discussed in its Motion for Summary Judgment and need not have been repeated in an objection.

3. Specifically, the statement included at page 2 of the R & R that states "Gener in consequence is the copyright holder of the works and may enforce his rights against all unauthorized users."

decide certain controversies). The court ordered that the disputed images be removed from Gener's computers, copied to diskettes, and deposited with the court under seal pending litigation over the ownership of the images.

Thereafter, Adcom filed an action in the Puerto Rico Court of First Instance, seeking, *inter alia*, a declaration that it was the owner of the works contained on the disk on the basis of its contract with Gener. Adcom also argued that it held the copyright to the images under the doctrine of a "work made for hire." *See* 17 U.S.C. §§ 101, 201(b). Gener responded that Adcom's claim was for economic rights deriving from the images, and thus, the Puerto Rico law claim was preempted by federal copyright law and the Puerto Rico court lacked jurisdiction. *See* 17 U.S.C. § 301(a) (preemption); 28 U.S.C. § 1338(a) (exclusive federal jurisdiction).

The Court of First Instance, San Juan Part, found that the arrangement between Gener and Adcom was not work for hire. Each subsequent Court has repeatedly affirmed the initial determination that no work for hire contract existed. *See Gener–Villar v. Adcom Group, Inc.*, 417 F.3d 201 (1st Cir.2005). Gener in consequence is the copyright holder of the works and may enforce his rights against all unauthorized users. As a result of such litigation, the Court of First Instance concluded that the action "did not arise under federal copyright law because it was 'not based on a claim for an author's economic rights, but on the delivery of a computer disk over which[ ] [Adcom] alleges having an ownership right due to having paid for the information contained in it.' "

In the instant federal action, both Adcom and Mr. Special initially filed separate motions for summary judgment based upon the State court's judgments and the doctrine of *res judicata.* The District

Court agreed, but the Court of Appeals for the First Circuit reversed and remanded the case to the district court for further consideration. *See Gener–Villar v. Adcom Group, Inc.*, 417 F.3d at 201.

Mr. Special has now filed a motion for partial summary judgment on grounds that it is an innocent party in this litigation since it lacks information as to any actual copyright infringements of Gener's photographs. Said co-defendant avers it did not contribute, participate nor was informed who worked in the shoppers or the photographs for the shoppers it contracted with Adcom, for which summary disposition warrants the complaint be dismissed as to codefendant Mr. Special.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Pursuant to the language of the rule, the moving party bears the two-fold burden of showing that there is "no genuine issue as to any material facts," and that he is "entitled to judgment as a matter of law." *Vega–Rodríguez v. Puerto Rico Tel. Co.*, 110 F.3d 174, 178 (1st Cir.1997). After the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact." *Cortés–Irizarry v. Corporación Insular*, 111 F.3d 184, 187 (1st Cir.1997). A fact is deemed "material" if it potentially could affect the outcome of the suit. *Id.* Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful

to the party resisting summary judgment, could resolve the dispute in that party's favor." *Id.*

At all times during the consideration of a motion for summary judgment, the Court must examine the entire record "in the light most flattering to the non-movant and indulge all reasonable inferences in the party's favor." *Maldonado–Denis v. Castillo–Rodríguez,* 23 F.3d 576, 581 (1st Cir.1994). There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood...." *Greenburg v. Puerto Rico Mar. Shipping Auth.,* 835 F.2d 932, 936 (1st Cir.1987). In fact, "[o]nly if the record, viewed in [this] manner and without regard to credibility determinations, reveals *no genuine* issue as to any material fact may the court enter summary judgment." *Cadle Co. v. Hayes,* 116 F.3d 957, 960 (1st Cir.1997).

 Finally, when considering this motion, unsettled issues of motive and intent as to the conduct of any party will normally preclude the Court from granting summary judgment. *Mulero–Rodríguez v. Ponte, Inc.,* 98 F.3d 670, 677 (1st Cir.1996) (reversing summary judgment and emphasizing that "determinations of motive and intent ... are questions better suited for the jury") (internal quotation marks omitted) (citation omitted); *see also Tew v. Chase Manhattan Bank, N.A.,* 728 F.Supp. 1551, 1555 (S.D.Fla.1990) ("Certain issues such as fraud, intent, and knowledge lend themselves to trial, rather than summary judgment. These matters can often only be proved by reliance upon circumstantial evidence except in the rare case where there is uncontroverted proof of a 'smoking gun.' "). However, "even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences [or] unsupported speculation." *Ayala–Gerena v. Bristol Myers–Squibb Co.,* 95 F.3d 86, 95 (1st Cir.1996).

## UNCONTESTED/CONTESTED FACTS

### A. Co-defendant Mr. Special's Uncontested Issues of Facts.

Co-defendant Mr. Special submits there are no genuine issue of material facts in controversy as follows, to establish it is an innocent party in this litigation and entitled to summary judgment, as follows:

1. Mr. Special is a local supermarket chain which operates several stores through out Puerto Rico, with main offices in Mayaguez, Puerto Rico. *Co-deft's Uncontested ¶ 1.*

2. Adcom is an advertising and public relations agency with main offices in Guaynabo, Puerto Rico. *Id.* at ¶ 2.

3. Mr. Special is not Adcom's owner, stockholder or partner. Mr. Special is solely a client of Adcom. *Id. at ¶ 3.*

4. For years, Mr. Special has retained the services of Adcom to perform advertising and public relations campaigns. *Sworn Statement of Santos Alonso Maldonado, ¶¶ 1–3.*

5. Once a year, officers of Mr. Special would meet with officers of Adcom to discuss the services proposals and the budget of their advertising and public relations campaign so as to enter into the services agreement for the year. *Id. at ¶ 4.*

6. Mr. Special does not intervene with Adcom's production of the shopper nor was it informed as to which of Adcom's employees worked in any of the shoppers. *Id. ¶ 5.*

7. Mr. Special nor any of its officers were aware of Gener's intervention in the production of the shoppers and/or any advertisement prepared for Mr. Special nor of Gener's proprietary right to any photograph, art, drawing and/or material by any party. *Sworn Statement of Santos Alonso Maldonado, ¶¶ 6–7.*

### B. Plaintiff Gener's Contested Issues of Facts.

Plaintiff Gener avers, in opposition to co-defendant Mr. Special's uncontested statements, that it holds United States Copyright Office Certificate of Registration Form VA no. VAu 529–609, on a work titled Photographs Collection of Frank Gener–Villar Volume I, under his name. It is Gener's contention that Adcom and subsequently co-defendant Mr. Special are infringers of his copyright. Gener also avers Mr. Special had actual knowledge, from March 2000 and therefrom, that Gener was claiming intellectual property rights over the material object contained in the computer hardware retained by Adcom.

1. Throughout the history of Adcom, its stockholders have been: Ms. Debbie Alonso Rodríguez, Mr. Santos Alonso Cintrón, Mr. Edwin Alonso Rodríguez and Mr. Edwin Alonso Cintrón. All these are also officers of Mr. Special and children of Mr. Special's President and stockholder, Mr. Santos Alonso Maldonado. Mr. Special is a family own business wholly owned by Debbie Alonso's family. *Gener's Uncontested ¶¶ 1–2;; Exhibit 1, Debbie Alonso's depo. of 3–31–2006 pp. 85–86.*

2. At the time of the facts alleged in Gener's complaint, Mr. Special was and still remains a client of Adcom. *Gener's Uncontested ¶ 3; Debbie Alonso's depo. pp. 45–46.*

3. Mr. Special would provide Adcom with a list of the products it wanted to have photographs printed in a particular flyer/shopper to be prepared by Gener, including a description of the article with a photograph of the flyer prepared by Gener. *Gener's Uncontested ¶¶ 4–5; Debbie Alonso's depo. pp. 46–47, 56–57.*

4. Mr. Special would provide Adcom via e-mail photographs to be published. *Gener's Uncontested ¶ 6; Debbie Alonso's depo. pp. 60–63.*

5. If Adcom had to take a new picture of a product Mr. Special wanted on the flyer, Adcom would ask Gener to take the picture and then invoiced Mr. Special separately solely for the cost of taking the picture. *Gener's Uncontested ¶ 7; Debbie Alonso's depo. p. 54; Emma Vilella's depo. p. 35; Debbie Alonso's depo. of 4–25–2006, p. 7.*

6. Mr. Special would order Adcom to take new photographs of a product whenever Mr. Special's clients informed Mr. Special that its product had changed. *Gener's Uncontested ¶ 8; Debbie Alonso's depo. of 3–31–2006, pp. 95–96.*

7. At times, Mr. Special would take the initiative and order Adcom to take new photographs of generic products. *Gener's Uncontested ¶ 9; Debbie Alonso's depo. of 3–31–2006, p. 98; Debbie Alonso's depo. of 4–25–2006, p. 18.*

8. Adcom would invoice Mr. Special a flat fee for the artwork and the design and layout flyer. *Gener's Uncontested ¶ 10; Debbie Alonso's depo. of 3–31–2006, pp. 53–54; Emma Vilella's depo. pp. 35–36.*

9. Mr. Special would ask Adcom to make changes in the layout to highlight a particular product and Adcom would transmit that request to Gener who would incorporate Mr. Special's request. *Gener's Uncontested ¶ 11; Debbie Alonso's depo. of 3–31–2006, p. 71.*

10. According to Adcom's agent Emma Vilella, Mr. Special would determine where "evertything" would be placed on a particular shopper's layout. *Gener's Uncontested ¶ 12; Emma Vilella's depo. p. 40.*

11. Mr. Special would also determine if a particular product would appear on the first page of a shopper. *Gener's Uncontested ¶ 13; Emma Vilella's depo. p. 41.*

12. Gener would receive orders for artwork and photographs from Adcom's "Traffic Executive" "following the instructions and directives" of Mr. Special. *Gener's Uncontested ¶ 14; Debbie Alonso's depo. p. 104.*

13. Mr. Special would at times make pictures on a layout to indicate to Adcom how it would like its products to appear on the shopper, including the place, size, photograph or art. *Gener's Uncontested ¶ 15; Debbie Alonso's depo. 3–31–2006 p. 72.*

14. Adcom had no independent criteria to determine what particular product or photograph should appear on the shopper, but rather adhered to the "instructions" of Mr. Special. *Gener's Uncontested ¶ 16; Debbie Alonso's depo. of 3–31–2006, p. 93.*

15. Mr. Special was fully aware of Adcom's internal list of photographs which were maintained in Gener's computer server. *Gener's Uncontested ¶ 17; Debbie Alonso's pp. 94–95.*

16. Mr. Special was aware of the photos which were added to the photograph database "bank" and were in the custody of the Commonwealth Court. *Gener's Uncontested ¶ 19; Debbie Alonso's depo. p. 83.*

17. Mr. Special's management was fully aware, as of the filing of state court proceedings in March 2000, of the Commonwealth's court's suit between Adcom and Gener over photographs in question, and was fully aware and put on notice of the "process" undergone by Adcom with respect to that suit. *Gener's Uncontested ¶ 20; Debbie Alonso's depo. pp. 83, 84.*

18. Ms. Debbie Alonso, President of Adcom, informed her father, Mr. Santos Alonso, President of Mr. Special, of the existence of the Commonwealth court lawsuit over the photographs. *Gener's Uncontested ¶ 21; Debbie Alonso's depo. pp. 85–86.*

19. When the Commonwealth Court litigation ensued, Debbie Alonso informed Santos Alonso of Mr. Special: "There is a lawsuit with the contractor that would supply us with the graphic arts services". *Excerpts Depo. Debbie Alonso, March 31, 2006, p. 86.* Debbie Alonso, informed her father Santos Alonso, President of Mr. Special, that "at that moment" that "the court had ruled that while it was determined who owned the information, everything would be taken out of the computer and kept under custody." *Gener's Uncontested ¶¶ 22–23; Debbie Alonso's depo. p. 87.*

20. Debbie Alonso, informed her father Santos Alonso, President of Mr. Special, that "Adcom had to do without the services of Mr. Gener, and therefore Mr. Gener was claiming that the information belonged to him. That until the Court did not determine who owned [the information] the Court would keep custody of all the information that Gener had in his machines." *Gener's Uncontested ¶ 24; Debbie Alonso's depo. p. 87.*

21. Debbie Alonso, also informed her father Santos Alonso, President of Mr. Special, that the Court of First Instance had ruled in Adcom's favor, to the effect that the photos belonged to Adcom. *Gener's Uncontested ¶ 25; Debbie Alonso's depo. p. 88.*

22. Upon hearing of the news transmitted to him by his daughter, related to the state court litigation over the photographs,

Mr. Santos Alonso, President of Mr. Special, did not tell his daughter to stop using the photographs. *Gener's Uncontested ¶ 26; Debbie Alonso's depo. p. 91.*

23. Mr. Special, while knowing and being aware of the controversy over the photographs, continued purchasing flyers, without telling Adcom to cease using the photos. This knowing acquiescence continued until the practice of using Gener's photographs was stopped under advice of Adcom's counsel after the Court of Appeals for the First Circuit issued its opinion in *Gener–Villar v. Adcom Group, Inc.,* 417 F.3d 201 (1st Cir.2005), which remanded the case back to the district court. *Gener's Uncontested ¶ 28; Emma Vilella's depo. pp. 43–44.*

It is now proper to discuss both the request for dismissal filed by Mr. Special on grounds of being an innocent infringer and for summary disposition of the claims on same grounds.

## LEGAL DISCUSSION

### A. Innocent Infringement.

On the first hand, co-defendant Mr. Special's request for dismissal of Gener's claims against same is predicated on allegations it was an innocent copyright infringer who lacked actual knowledge of any copyright infringements of plaintiffs, that is, Gener's photographs.

The "innocent infringer" provision of section 504(c)(2) of the Copyright Act set forth in Title 17, *United States Code, Section,* 501 *et seq.,* has been the subject of extensive discussion. One must first take notice that the Copyright Act is a strict liability regime under which any infringer, whether innocent or intentional, is liable. The exception for innocent infringers allows for a reduction of minimum statutory damages to $100 where the infringer "was not aware and had no reason to believe that his or her acts constituted an infringement of copyright,"[1] and it is aimed to protect against unwarranted liability in cases of occasional or isolated innocent infringement, as well as to offer adequate insulation to users, such as broadcasters and newspaper publishers, who are particularly vulnerable to this type of infringement suit. On the other hand, by establishing a realistic floor for liability, the provision preserves its intended deterrent effect; and it would not allow an infringer to escape simply because the plaintiff failed to disprove the defendant's claim of innocence. *See* 988 Acts. Senate Report No. 100–352, 1988 *U.S.Code Cong. and Adm. News,* p. 3706.[2]

■ Additionally, as plaintiff Gener's discussion in the opposition provides, direct participation in infringing activity is not a prerequisite for infringement liability, as the Copyright Act grants to copy-

---

1. For "innocent" infringements or those where the infringer was not aware that the activity constituted copyright infringement, the minimum limit has been a reduced amount of $100 under both the 1909 Act and the 1976 Act, and $200 under the 1976 Act as amended 1988. *See Measure of statutory damages to which copyright owner is entitled under 17 U.S.C.A. § 504(c),* 105 A.L.R. Fed. 345.

2. "Federal copyright law sets forth a seemingly straightforward standard for copyright infringement: '[a]nyone who violates any of the

exclusive rights of the copyright owner' is liable for copyright infringement. By branding as an infringer 'anyone' who infringes a copyright, the Copyright Act casts a wide net that ensnares infringers of all different stripes. Indeed, the Act treats all infringers alike-from the most innocent to the most nefarious. In copyright's strict liability scheme, the infringer's faultlessness or culpability is of anomalously little relevance." *See* Dane S. Ciolino, Erin A. Donelon, *QUESTIONING STRICT LIABILITY IN COPYRIGHT,* 54 RULR 351 (2002).

right owners not only the right to exercise the exclusive rights, but also the right "to authorize" the exercise of those rights. The inclusion of the right "to authorize" was "intended to avoid any questions as to the liability of contributory infringers"— those who do not directly exercise the copyright owner's rights, but "authorize" others to do so. *See* House Report at 61, *reprinted* in 1976 *ISKCON* 5674.

■ Other than the reference to a copyright owner's right "to authorize" exercise of the exclusive rights, however, the Copyright Act does not mention or define "contributory infringement" or "vicarious liability," the standards for which have developed through case law, mostly in tort cases. If someone has the "right and ability" to supervise the infringing action of another, and that right and ability "coalesce with an obvious and direct financial interest in the exploitation of copyrighted materials—even in the absence of actual knowledge" that the infringement is taking place—the "supervisor" may be held vicariously liable for the infringement. *See Shapiro, Bernstein & Co. v. H.L. Green Co.,* 316 F.2d 304, 307 (2d Cir.1963) (*holding* that company that leased floor space to phonograph record department was liable for record department's sales of "bootleg" records despite absence of actual knowledge of infringement, because of company's beneficial relationship to the sales). Vicarious liability is based on a connection to the direct infringer (not necessarily to the infringing activity).[3]

With respect to the "innocence" of the vicarious infringer, the Supreme Court has warned:

Intention to infringe is not essential under the Act. And knowledge of the particular selection to be played or received is immaterial. One who hires an orchestra for a public performance for profit is not relieved from a charge of infringement merely because he does not select the particular program to be played. Similarly, when he tunes in on a broadcasting station, for his own commercial purposes, he necessarily assumes the risk that in doing so he may infringe the performing rights of another.

*See Buck v. Jewell–LaSalle Realty Co.,* 283 U.S. 191, 198–99, 51 S.Ct. 410, 75 L.Ed. 971 (1931) (citations omitted) (at the time, infringement of the public performance right required that the performance was "for profit").

Strict liability is also supported by reviewing the commentators to Congress' decision:

Innocent intent should no more constitute a defense in an infringement action than in the case of conversion of tangible personalty. In each case the injury to a property interest is worthy of redress regardless of the innocence of the defendant. Moreover, a plea of innocence in a copyright action may often be easy to claim and difficult to disprove. Copyright would lose much of its value if third parties such as publishers and producers were insulated from liability because of their innocence as to the culpability of the persons who supplied them with the infringing material. *See* 3 *NIMMER ON COPYRIGHT* § 13.08 at 13–291 (1994).

*See also* P. GOLDSTEIN, *COPYRIGHT* § 9.4 at 162 (1989) ("the standard rationale for excluding innocence as a defense to copyright infringement is that, as between the copyright owner and the infringer, the

---

**3.** *See, e.g., Dreamland Ball Room v. Shapiro, Bernstein & Co.,* 36 F.2d 354 (7th Cir.1929); *Famous Music Corp. v. Bay State Harness Horse Racing & Breeding Ass'n, Inc.,* 554 F.2d 1213 (1st Cir.1977); *KECA Music, Inc. v. Dingus McGee's Co.,* 432 F.Supp. 72 (W.D.Mo. 1977).

infringer is better placed to guard against mistake"; "the strict liability rule should discipline an infringer, who might otherwise mistakenly conclude that his copying will not infringe the copyrighted work, to evaluate the legal consequences of his conduct more carefully").

■ Such being the situation of strict liability, the provisions that "[a]nyone who, without the authorization of the copyright owner, exercises any of the exclusive rights of a copyright owner, as granted and limited by the Copyright Act," would consider co-defendant Mr. Special an infringer of copyright under Section 501(a). Accordingly, co-defendant Mr. Special's argument for dismissal at this stage of Gener's claim on grounds of innocent infringer is unwarranted.

## B. Summary Judgment Controversies of Material Issues of Facts.

On the other hand, Gener has presented a controversy of genuine issues of material facts that would still defeat, at least at the summary judgment stage, co-defendant Mr. Special's submission of an innocent infringer. Plaintiff Gener submits Mr. Special cannot invoke its state of mind to escape vicarious or contributory liability for Adcom's infringement in this case and even if, one could ignore that Mr. Special was put on notice when Debbie Alonso fully briefed Mr. Special in March 2000 of the litigation over the ownership of the computer disk and the physical photograph, such claims of "innocence" by Mr. Special can only invoke its innocence or willfulness of the infringing activity as a mitigating defense, as to the award of statutory damages.[4]

■ There is a disputed controversy of facts as to the claim of not being aware of actual infringement and the statements submitted by establishing Mr. Special's acquiescence of the use of the photographs at issue, at least when Adcom, under advice of counsel, decided not to use the photographs after the Court of Appeals for the First Circuit entered its opinion, reversing summary judgment in Adcom's favoring this copyright infringement case. Thus, from the very same moment that Debbie Alonso filed suit in Commonwealth Court, alleging ownership of the photographs, Mr. Santos Alonso Maldonado was put on notice that Mr. Gener was contesting ownership rights over the photos. Therefore, there are contradictory testimony from co-defendants' officers regarding their knowledge and time frame, thereof, as to the disputed photographs and claims of proprietary rights and copyright infringement.

Although the sworn statement by Mr. Santos Alonso Maldonado, as President of Mr. Special alleges that is has not participated directly in the production of the fliers (*Co-defendant's Statement of Uncontested Facts, Exhibit 1* ), plaintiff Gener's opposition submits the testimonies at the depositions of Ms. Debbie Alonso and Ms. Emma Vilella, co-defendant Adcom's officers to the contrary.

Succinctly, these testimonies indicate that Mr. Special participated in the supervision and control of the fliers or contributed heavily to affect the contents of these shoppers, to include that Mr. Special would: determine what products should be printed or photographed; provide codefendant Adcom with the photograph to be published; control requests for the partic-

---

**4.** Courts should be given discretion to increase statutory damages in cases of willful copyright infringement and to lower the minimum where the infringer is innocent. 17

U.S.C.A. § 504(c)(2). *See Venegas–Hernández v. Sonolux Records,* 370 F.3d 183 (1st Cir. 2004).

ular product that Gener should photograph and pay Adcom separately solely for the taking the picture; take the "initiative" and order Adcom to take new photographs of generic products, such as a pork chop or a lettuce head; ask Adcom to make detailed changes in the layout of the fliers to highlight a particular product; determine where "everything" would be placed on a particular shopper's layout and also determine if a particular product would appear on the first page of a shopper. Co-defendant Adcom's "Traffic Executive", Ms. Vilella, gave Gener his marching orders "following the instructions and directives" of Mr. Special and Mr. Special would draw pictures on a layout to indicate to Adcom how it would like its product to appear on the shopper, including the place, size, photograph or art. Additionally, there is testimony that Adcom had no independent criteria to determine what particular product or photograph should appear on the shopper, but rather adhered to the "instructions" of Mr. Special.

All the above, taking notice there is distinct and opposite deposition testimonies of Adcom and the sworn statement submitted by co-defendant Mr. Special as to when and to what extent Adcom's officer, Ms. Debbie Santos, provided information to Mr. Alonso, President of Mr. Special, who happens to be closely family related to Ms. Debbie Santos, establish a controversy of genuine facts regarding Gener's claims of proprietary rights and/or copyright infringements both at the courts of the Commonwealth of Puerto Rico and at federal level. (*Gener's Uncontested* ¶¶ *21–26; Debbie Alonso's depo. pp. 83, 85–86, 93–98; Vilella's depo. pp. 35–36* ).

The above discussed certainly raises genuine controversies of material fact that should be determined by the trier of facts and are not proper to elucidate at summary judgment.

### CONCLUSION

In view of the foregoing, this Magistrate Judge recommends that co-defendant Mr. Special's Motion Requesting Partial Summary Judgment be **DENIED.** **(Docket No. 87).**

IT IS SO RECOMMENDED.

The parties have ten (10) days to file any objections to this report and recommendation. Failure to file same within the specified time waives the right to appeal this order. *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–151 (1st Cir.1994); *United States v. Valencia–Copete,* 792 F.2d 4 (1st Cir.1986). *See Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 991 (1st Cir.1988) ("Systemic efficiencies would be frustrated and the magistrate's role reduced to that a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round").

Aug. 9, 2007.